IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN C. BETSKOFF,

    *Plaintiff*,

v.

ENTERPRISE RENT A CAR
COMPANY OF BALTIMORE, LLC,

    *Defendant*.

Civil Action No. ELH-11-2333

## MEMORANDUM OPINION

Kevin C. Betskoff, Sr.,[1] the self-represented plaintiff, filed a Complaint (ECF 1) against

Enterprise Rent A Car Company of Baltimore, LLC ("Enterprise"), defendant, arising out of

alleged unauthorized charges to Betskoff's debit card made by Enterprise. Claiming that

Enterprise improperly charged plaintiff's debit card in connection with his rental of a vehicle

from Enterprise, Complaint ¶¶ 7-25, Mr. Betskoff asserts five counts against Enterprise: (1) a

request for declaratory judgment, pronouncing that Enterprise acted as a "debt collector" without

a license, as required by Maryland state law, along with a request for "compensatory damages"

in the amount of $219.66; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. §§ 1692 *et seq.*; (3) violation of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. §§ 41 *et seq.*;[2] (4) violation of the due process clause of the Fourteenth Amendment to the

United States Constitution; and (5) the tort of intentional infliction of emotional distress

("IIED").

---

[1] The caption of the Complaint omits reference to "Sr." However, the body of the Complaint identifies plaintiff as "Kevin C. Betskoff Sr."

[2] Plaintiff misidentifies the FTC Act as the "Fair Trade Commission Act." Complaint at 8.

Now pending is Enterprise's motion to dismiss ("Motion") (ECF 9), filed pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion has been fully briefed,[3] and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant Enterprise's Motion.

## Factual Background

In considering a motion to dismiss under Rule 12(b)(6) (and, in some circumstances, under Rule 12(b)(1)), a court assumes the truth of the well pleaded facts alleged in the plaintiff's complaint, and construes them in the light most favorable to the plaintiff. *See, e.g.*, *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (standard under Rule 12(b)(6)).[4] Accordingly, the following factual allegations are drawn from plaintiff's Complaint.

In September 2008, Mr. Betskoff rented a 2008 Nissan Altima from Enterprise because his own vehicle, a 1999 Cadillac Sedan Deville, was undergoing repairs. Complaint ¶¶ 8-9. The "full cost of the rental" was the responsibility of an automobile insurer, State Farm Insurance Company. *Id.* ¶ 8.[5] Although State Farm was responsible for the rental cost, Enterprise required Mr. Betskoff to pay a $100 "deposit" and provide a "major credit card or debit card." *Id.* ¶ 9.

---

[3] I have considered Enterprise's Motion (ECF 9) and memorandum in support thereof (ECF 9-1) (collectively, "Motion"); Mr. Betskoff's memorandum in response ("Opposition" or "Opp.") (ECF 13); and Enterprise's Reply (ECF 14).

[4] "There are two ways" in which a defendant may present a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *Buchanan v. Consol. Stores Coro.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001). A defendant "may either contend (1) that the complaint fails to allege facts upon which subject matter jurisdiction can be based, or (2) that the jurisdictional facts alleged in the complaint are untrue." *Id.* In the former circumstance, the Court construes the facts in the light most favorable to the plaintiff, as it does in considering a motion under Rule 12(b)(6). *See id.*; *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In the latter, "a district court may hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999).

[5] The Complaint does not make clear whether State Farm was Mr. Betskoff's insurer, or was the insurer of another driver involved in a collision with Mr. Betskoff. In any event, State Farm is not a party to this case.

Betskoff provided his Visa debit card, issued by Wachovia Bank. *Id.* He was led "to believe this money would be refunded at the conclusion of the rental." *Id.*

Mr. Betskoff returned the Altima on or about September 26, 2008. *Id.* ¶ 10. On or about September 29, 2009, Enterprise informed plaintiff that the Altima had been returned with "'scrapes and paint on the passenger quarter panel wheel well.'" *Id.* ¶ 11 (quotation marks in original). Mr. Betskoff met with a representative of Enterprise on September 29, 2009, to "address Enterprise's concerns." *Id.* ¶ 12. At the meeting, Mr. Betskoff "did not deny that there may have been some damage to the car" because, in his view, he was "not financially responsible," in light of the fact that "the rental car was fully insured by State Farm Insurance Company for the duration of the rental." *Id.* The next day, September 30, 2008, "Enterprise debited $19.66 from Betskoff's Visa debit card with no explanation why and with no notice having been sent to Betskoff that this charge was being placed against him." *Id.* ¶ 14.

On or about November 14, 2008, "Enterprise sent Betskoff a letter" asserting that a "balance of $100.00 was due" in connection with the rental. *Id.* ¶ 15. On or about November 17, 2008, Betskoff called and wrote to Enterprise's "loss control administrator to dispute this claim of any money being owed by him to Enterprise." *Id.* ¶ 16. On or about December 1, 2008, Enterprise sent a notice to plaintiff, signed by "Freddie Sample," requesting payment. Complaint ¶ 17. Demand letters were also sent to plaintiff by Enterprise on December 15, 2008, and January 15, 2009, both of which were signed by "Enterprise Rent-A-Car." Complaint ¶¶ 18-19. Both letters advised plaintiff that his "account" was "seriously past due." *Id.* In addition, the letter of January 15, 2009, informed plaintiff that Enterprise intended to "pursue collection activity through a collection company or use an attorney to commence legal action." *Id.* ¶ 19. Although Betskoff disputed the validity of the alleged debt, he obtained no resolution of the issue

from Enterprise. *See* Complaint ¶¶ 16-19.

On January 16, 2009, "Enterprise charged Betskoff's debit card $100," which was immediately debited from his Wachovia checking account. *Id.* ¶ 20. "This was done even though Betskoff had continually disputed the billing and charge with Enterprise and clearly was against Betskoff's wishes." *Id.* Betskoff avers that the "unauthorized and unexpected withdrawal" caused a disruption in his ability to pay his other bills, "given his meager funds and poor income earning capacity," and caused him to suffer "a great deal of stress, anxiety and emotional distress." *Id.* ¶ 21.

Betskoff "filed a dispute with his bank regarding the charge." *Id.* ¶ 22. His bank initially issued a provisional credit to his account, but later rescinded the credit and returned the disputed funds to Enterprise. *Id.* ¶¶ 22-23. Mr. Betskoff again requested a refund from Enterprise in a letter dated May 15, 2009, in which he stated: "'I am going to ask you one more time to refund my money.' 'Otherwise, I am going to look into a more judicial way of recovering my money.'" *Id.* ¶ 24. Mr. Betskoff received no response to his letter. *Id.* ¶ 25. Subsequently, on August 22, 2011, Mr. Betskoff filed suit in this Court.

## Discussion

### A.  Standard of Review

Enterprise purports to base its Motion on both Rule 12(b)(6), which permits dismissal of a complaint that fails "to state a claim upon which relief can be granted," and Rule 12(b)(1), which permits dismissal for "lack of subject-matter jurisdiction." As I shall explain in more detail in the discussion, the Court possesses subject matter jurisdiction over plaintiff's claims. Enterprise's arguments are more appropriately addressed in the context of Rule 12(b)(6).

The purpose of a Rule 12(b)(6) motion is "'to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

## B. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Plaintiff asserts that the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the federal question jurisdiction statute, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* Complaint ¶ 2. Counts Two, Three, and Four of the Complaint assert claims under federal law. Therefore, they come within federal question jurisdiction (although, as I shall explain, none of them states a claim upon which relief can be granted).

Counts One and Five of plaintiff's Complaint allege claims under state law, not federal law. However, although plaintiff does not cite it, 28 U.S.C. § 1367(a) grants district courts

"supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Thus, the Court has authority to exercise supplemental jurisdiction over Counts One and Five.  Nevertheless, supplemental jurisdiction is discretionary, and a court may decline to exercise it for a variety of reasons.  *See* 28 U.S.C. § 1367(c) (enumerating bases for declining to exercise supplemental jurisdiction).  These reasons include the fact that a state law claim "raises a novel or complex issue of State law," § 1367(c)(1); that the state law "claim substantially predominates over the claim or claims over which the district court has original jurisdiction," § 1367(c)(2); that the "district court has dismissed all claims over which it has original jurisdiction," § 1367(c)(3); and "in exceptional circumstances, [that] there are other compelling reasons for declining jurisdiction." § 1367(c)(4).

Diversity jurisdiction provides another avenue for federal courts to hear claims under state law.  Diversity jurisdiction is established by 28 U.S.C. § 1332(a), which grants federal district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  However, in his Complaint, plaintiff did not assert jurisdiction on the basis of diversity.  As noted, he asserted federal question jurisdiction under § 1331, and I agree that federal question jurisdiction exists regarding his federal claims; thus, his state law claims are subject to supplemental jurisdiction.

In his Opposition, plaintiff disregards his earlier assertion of federal question jurisdiction, and strenuously insists that diversity jurisdiction is satisfied.  *See* Opp. at 3-5.  If that were so, the Court would have original jurisdiction, not merely supplemental jurisdiction, over plaintiff's

state law claims.  But, as I shall explain, diversity jurisdiction does not apply.

## C.  FDCPA (Count Two)

I shall first address plaintiff's claim under the FDCPA.  Mr. Betskoff concedes that Enterprise "is not a debt collection company."  Complaint ¶ 6.  But, he contends that Enterprise "has violated the FDCPA by acting as a debt collector when it does not hold a license to do so."  Complaint ¶ 31.  Moreover, he avers that Enterprise failed to comply with "notice requirements" under the FDCPA, and committed other FDCPA violations by "taking money from the Plaintiff that was disputed in a timely manner," and by sending "a letter to the Plaintiff threatening action that [Enterprise] did not intend to take."  *Id.* ¶¶ 33-35.

Enterprise argues that it is not subject to liability under the FDCPA, because it was not acting as a "debt collector" under the statute with respect to the alleged debts at issue, but rather is the original creditor.  Motion at 4-5.  According to Enterprise, the "FDCPA has no application . . . in instances where a creditor is attempting to collect a debt in its own name."  *Id.* at 4.  Additionally, Enterprise argues that plaintiff's FDCPA claim is time-barred by the FDCPA's one-year statute of limitations, *see* 15 U.S.C. § 1692k(d), which Enterprise contends is a jurisdictional bar.  Motion at 5.

In response, Mr. Betskoff concedes that "the FDCPA 'generally' applies only to third party debt collectors—not internal collectors for an 'original creditor.'"  Opp. at 8 (quotation marks in original).  However, he notes that the FDCPA "contains numerous exceptions to the definition of a 'debt collector,'" and argues that "in-house collections are covered by the FDCPA if they create the impression that they are an independent collector."  *Id.*  Moreover, Mr. Betskoff observes that "some states have similar state consumer protection laws which mirror the FDCPA, and regulate individual creditors."  Opp. at 8.  In this regard, he cites the Maryland Consumer

Debt Collection Act ("MCDCA"), Md. Code (2005 Repl. Vol., 2011 Supp.), §§ 14-201 *et seq.* of the Commercial Law Article ("C.L."), and the Maryland Consumer Protection Act, C.L. §§ 13-101 *et seq.*, as Maryland statutes that "apply to both outside and in-house collection activities." Opp. at 8. Without citation to authority, Mr. Betskoff maintains that, where state consumer protection law applies to "in-house" debt collectors, "the collector so defined is subject to federal law." *Id.*

Mr. Betskoff also disputes Enterprise's assertion that his FDCPA claim is time-barred. He cites 28 U.S.C. § 1658(a), a provision of the Judicial Improvements Act of 1990, which establishes a general (although non-retroactive) federal statute of limitations: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [*i.e.*, December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." Noting that his Complaint was filed within four years of the incidents he alleges, plaintiff maintains that his Complaint is timely under § 1658(a). Furthermore, even if his Complaint was filed outside of the limitations period, plaintiff argues that his claim is nonetheless subject to "tolling" because he "put the defendant on notice of an impending law suit by way of [US] mail in May 2009." Opp. at 7.

Because Enterprise is the creditor, and not a "debt collector," with respect to the alleged debts, Enterprise is correct in asserting that it has no liability under the FDCPA for the actions alleged by plaintiff. Alternatively, plaintiff's FDCPA claim is time-barred.[6] Accordingly, Count

---

[6] I agree with Enterprise that plaintiff's claim is time-barred, but I do not agree with Enterprise's assertion that the FDCPA's limitations provision is jurisdictional. Although neither the Fourth Circuit nor the Supreme Court has resolved the matter, the majority view in the federal courts is that the FDCPA's statute of limitations is not a jurisdictional bar. *See, e.g.*, *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939-40 (9th Cir. 2009) (holding that the FDCPA's statute of limitations is not jurisdictional); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 327 (7th Cir. 2000) ("the statute of limitations provision in the FDCPA is not a jurisdictional restriction"); *Clark v. Bonded Adjustment Co.*, 176 F. Supp. 2d 1062, 1066-68

Two of the Complaint fails to state a claim upon which relief can be granted. My reasons follow.

The FDCPA, originally enacted in 1977, *see* Pub. L. 95-109, 91 Stat. 874, was designed to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Accordingly, it imposes a variety of obligations and potential liabilities on "debt collectors," who are generally defined as entities that "use[] any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or [that] *regularly* collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due *to another*." 15 U.S.C. § 1692a(6) (emphasis added). In other words, the FDCPA is concerned with "rights for consumers whose debts are placed in the hands of *professional* debt collectors for collection." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (emphasis added). But, it does not "apply to creditors collecting debts in their own names and whose primary business is not debt collection," or to the individual employees of such creditors. *Kennedy v. Lendmark Fin. Servs.*, Civ. No. RDB-10-2667, 2011 WL 4351534, at *3 (D. Md. Sept. 15, 2011); *see also Akpan v. First Premier Bank*, Civ. No. DKC-09-1120, 2010 WL 917886, at *4 (D. Md. Mar. 8, 2010). As the Seventh Circuit recently said, "An entity that

---

(E.D. Wash. 2001) (concluding, after in-depth analysis, that "the presumption that statutory time limits are not jurisdictional has not been rebutted by anything in the language or legislative history of the FDCPA").

To be sure, one federal appeals court has concluded otherwise. *See Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 262 (8th Cir. 1992) (describing FDCPA's statute of limitations as "a jurisdictional statute"). However, *Mattson* has been criticized by other courts. *See, e.g.*, *Mangum*, 575 F.3d at 940 n.14 (opining that *Mattson*'s "statement was made without any real analysis"); *Johnson v. Riddle*, 305 F.3d 1107, 1115 (10th Cir. 2002) (recognizing that it was unnecessary to decide whether FDCPA's statute of limitations is jurisdictional, but noting that *Mattson* is "dubious authority," observing that the single case on which *Mattson* relied "has since been overruled—on precisely the point relied upon by *Mattson*—by the Sixth Circuit sitting en banc," and stating that "every other circuit to have weighed in on the issue has rejected the position adopted by *Mattson*; indeed, two circuits termed the position later adopted by *Mattson* 'frivolous'"); *Clark*, 176 F. Supp. 2d at 1065 (stating that *Mattson* "came to [its] conclusion without performing significant analysis of the statutory text or legislative history").

tries to collect money owed to itself is outside the FDCPA." *Carter v. AMC, LLC*, 645 F.3d 840, 842 (7th Cir. 2011).

Plaintiff's Complaint plainly and unequivocally alleges that all of Enterprise's actions were taken by Enterprise on its own behalf—to collect money purportedly owed to Enterprise, not to any other entity. Accordingly, Enterprise does not qualify as a "debt collector" under the FDCPA in the circumstances alleged here.

Mr. Betskoff is correct that the FDCPA's definition of "debt collector" also "includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). In other words, the FDCPA applies when "a creditor uses a pseudonym to collect a debt—that is, poses as a debt collector." *Shula v. Lawent*, 359 F.3d 489, 491 (7th Cir. 2004). But, plaintiff's Complaint contains no factual allegation that Enterprise presented itself as some other, unaffiliated entity. Rather, all of the alleged communications were "sent" by Enterprise. Complaint ¶¶ 15, 17-19.

As plaintiff also points out, there are several exceptions to the FDCPA's definition of "debt collector." *See* 15 U.S.C. § 1692a(6)(A)-(F).[7] However, the enumerated exceptions limit,

---

[7] The exceptions provide that the "term ['debt collector'] does not include" the following individuals or entities, 15 U.S.C § 1692a(6)(A)-(F):

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

rather than expand, the definition. They do not broaden the FDCPA's application to include creditors in general.

In the alternative, it is also clear that plaintiff's FDCPA claim is barred by limitations. Private parties are authorized to sue for violations of the FDCPA, *see* 15 U.S.C. § 1692k, but any such lawsuit must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The last act that the Complaint alleges Enterprise performed is a charge to Mr. Betskoff's debit card that was made on January 16, 2009. Plaintiff's Complaint was filed over two years later, on August 22, 2011.

Plaintiff's reliance on the four-year statute of limitations in 28 U.S.C. § 1658(a) is misplaced, for two reasons. First, § 1658(a) only applies "[e]xcept as otherwise provided by law"; thus, the FDCPA's own statute of limitations supersedes § 1658(a). Second, § 1658(a) only applies to claims "arising under an Act of Congress enacted after the date of the enactment" of § 1658(a). As noted, § 1658(a) was enacted on December 1, 1990. As we have also seen, the FDCPA was enacted in 1977. Therefore, § 1658(a) does not apply.

Moreover, plaintiff's argument for "tolling" of the limitations period is unfounded. The FDCPA's statute of limitations requires a plaintiff to do more within the one-year period than

---

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

merely notify the defendant that plaintiff intends to file suit; the statute requires the plaintiff to file suit within the time prescribed.  Indeed, establishing a deadline by which suit must be filed is the purpose of a statute of limitations.

"Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action."  *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987).  Plaintiff has alleged no conduct by Enterprise that concealed the existence of a cause of action.  Indeed, the facts are quite the opposite:  plaintiff's notice to Enterprise in May 2009 that he intended to file suit demonstrates that he was aware of his alleged claims at that time.  Yet, he did not file suit until well after limitations had run.

Accordingly, Count Two fails to state a claim against Enterprise.[8]

As plaintiff notes, there are Maryland statutes that cover terrain similar to the FDCPA.  As a self-represented party, plaintiff is entitled to liberal construction of his Complaint, *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and so his FDCPA claim could perhaps be construed generously as alleging violations of state law.[9]  As I shall explain, however, the Court lacks original jurisdiction over such state law claims, and will not exercise supplemental jurisdiction as to them.

---

[8] In so ruling, I need not determine whether the actions alleged by plaintiff would have violated the FDCPA if they had been performed by a "debt collector," or if plaintiff had timely filed suit.

[9] Plaintiff is not correct that an entity that qualifies as a "debt collector" under applicable state law is thereby automatically considered a "debt collector" under the FDCPA.  Rather, the FDCPA's relationship to state law is set forth in 15 U.S.C. § 1692n.  It states:

> [The FDCPA] does not annul, alter, or affect, or exempt any person subject to the provisions of [the FDCPA] from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of [the FDCPA], and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with [the FDCPA] if the protection such law affords any consumer is greater than the protection provided by [the FDCPA].

<u>D. FTC Act (Count Three)</u>

Count Three of plaintiff's Complaint alleges a violation of the FTC Act, 15 U.S.C. §§ 41 *et seq.* The FTC Act establishes the Federal Trade Commission ("FTC"), *see id.* § 41, declares that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce" are "unlawful," *id.* § 45(a)(1), and empowers the FTC to "prevent persons, partnerships, or corporations" (with exceptions not applicable here) "from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." *Id.* § 45(a)(2). In his Complaint, Mr. Betskoff contends that Enterprise "engaged in an unfair and deceptive practice that misled Betskoff," in violation of the FTC Act, by "cram[ming] unauthorized and unknown charges for questionable services onto Betskoff's debit card bill." Complaint ¶¶ 38-39.

Enterprise acknowledges that "cramming," which is "a practice by which the [defendant] bills a consumer for a product or service without first obtaining the consumer's informed consent," *FTC v. Kennedy*, 574 F. Supp. 2d 714, 717 (S.D. Tex. 2008), is a violation of the FTC Act. Motion at 6. However, Enterprise contends that the Complaint fails to allege cramming. Rather, in Enterprise's view, there are "no unwanted services alleged by Plaintiff nor are there any alleged false or misleading statements made by Enterprise." *Id.* "Accepting the allegations in the Complaint as true," Enterprise claims it "merely debited an amount that it believed was still due related to a service (i.e. a rental car) that Plaintiff admits that he both wanted and received." *Id.* Moreover, Enterprise argues that the Court "does not have subject matter jurisdiction to hear this claim," because the FTC has primary jurisdiction to consider novel FTC Act claims and, until the FTC has ruled, a federal district court should not consider such a claim." *Id.* at 6-7.

In response, Betskoff argues that he "is not required to file a complaint with the FTC before filing a civil action." Opp. at 9. In support of this contention, plaintiff cites a statement on the FTC's web site that the FTC has the authority for administrative enforcement of the FDCPA (not the FTC Act), but that aggrieved consumers may also file private lawsuits under the FDCPA. *Id.* In addition, he contends the he "was never told . . . by Enterprise Rent a Car[] what all of the charges to his Visa Debit card were for. Thus one can only assume cramming of unwanted charges occurred." *Id.*

In my view, Enterprise is correct in asserting that plaintiff's claim of an FTC Act violation must be directed to the FTC, rather than to this Court. Accordingly, I need not resolve whether plaintiff's Complaint adequately alleges "cramming," in violation of the FTC Act.

The FTC Act establishes a detailed administrative enforcement procedure to be followed by the FTC. *See* 15 U.S.C. § 45(b)-(*l*). It also vests authority in the FTC to file civil actions against persons or entities that engage in knowing violation of rules promulgated by the FTC identifying unfair or deceptive trade practices. *See id.* § 45(m). But, the FTC Act contains no provision that authorizes aggrieved individuals to file suit on their own behalf.

Accordingly, it has consistently been held that enforcement of the FTC Act is vested exclusively with the FTC, and that "private actions to vindicate rights asserted under the Federal Trade Commission Act may not be maintained." *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 987 (D.C. Cir. 1973). In other words, "under the [FTC Act] no private party—consumer or competitor—has standing to sue." *Penn–Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 911 n.1 (D. Md. 1997). *See, e.g.*, *Am. Airlines v. Christensen*, 967 F.2d 410, 413 (10th Cir. 1992); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990); *A & E Supply Co. v. Nationwide Mut. Ins. Co.*, 798 F.2d 669, 675 (4th Cir. 1986); *Jeter v. Credit Bureau, Inc.*,

760 F.2d 1168, 1174 n.5 (11th Cir. 1985); *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir.

1981); *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978); *Fulton v. Hecht*, 580

F.2d 1243, 1248 n.2 (11th Cir. 1978); *Holloway*, 485 F.2d at 988-1002; *see also Coulibaly v. J.P.

Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *13 (D. Md. Aug. 8,

2011); *Quality Inns Int'l, Inc. v. Patel*, Civ. No. HAR-86-191, 1988 WL 62882, at *3 (D. Md.

June 9, 1988).

Plaintiff's reliance on the statement on the FTC's website is inapt.  That statement

accurately refers to the FTC's non-exclusive enforcement authority under the FDCPA.  *See* 15

U.S.C. § 1692*l*(a).  It does not refer to the FTC Act, enforcement of which is exclusive to the

FTC.  *See, e.g.*, *Jeter*, *supra*, 760 F.2d at 1174 n.5 ("[C]onsumers were given a private right of

action to enforce the provisions of the FDCPA against debt collectors, 15 U.S.C.A. § 1692k, a

right which does not exist under the FTC Act.  Although the FDCPA provides a private right of

action, it also provides for administrative enforcement by the FTC.") (internal citations omitted).

As I have already discussed, plaintiff's FDCPA claim fails for independent reasons.

Accordingly, plaintiff's allegation of an FTC Act violation fails to state a claim upon

which relief can be granted, and must be dismissed.[10]  As with plaintiff's FDCPA Act claim, his

FTC Act claim could perhaps be liberally construed to allege a violation of state law, but this

does not save the claim from dismissal.  *See Coulibaly*, *supra*, 2011 WL 3476994, at *13

("Exercising an *extraordinarily* liberal reading of the complaint, one might read [plaintiff's FTC

Act] claim as an attempt to allege violations of the Maryland Consumer Protection Act, which

also protects against unfair and deceptive trade practices.") (emphasis in original) (internal

---

[10]  In this district, purported FTC Act counts asserted by private parties have been
dismissed for failure to state a claim.  *See, e.g.*, *Quality Inns*, *supra*, 1988 WL 62882, at *3
(dismissing FTC Act claim "for failure to state a cause of action").  Accordingly, I need not
consider the essentially academic issue of whether the Court lacks subject matter jurisdiction
over such claims as well.

footnote omitted).

## E.  Fourteenth Amendment (Count Four)

In Count Four of his Complaint, plaintiff contends that Enterprise "violated the due process clause of the 14th Amendment to the Constitution in that Defendant deprived Plaintiff of his property without the benefit of the fairness of a trial before a judge."  Complaint ¶ 42. Enterprise seeks dismissal of this count because "[t]here is no support for holding a non-state party liable to another private party under the Fourteenth Amendment."  Motion at 7.

The Due Process Clause of the Fourteenth Amendment provides, in part: "[N]or shall *any State* deprive any person of life, liberty, or property, without due process of law."  U.S. CONST., amend. XIV, § 1 (emphasis added).  In general, in order to succeed on a due process claim, the plaintiff must show: (1) that he "has a constitutionally protected 'liberty' or 'property' interest"; and (2) that he "has been 'deprived' of that protected interest by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).  The Due Process Clause "'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (internal quotation marks omitted). Therefore, in a claim under the Fourteenth Amendment, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999).  Put another way, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (citation omitted).

Plaintiff's complaint is devoid of any allegation of "state action" on the part of Enterprise. Accordingly, Count Four must be dismissed for failure to state a claim.

### F. State Law Claims

Plaintiff's remaining claims are Count One, which seeks a declaratory judgment and money damages in connection with Enterprise's alleged failure to obtain a debt collector's license under Maryland law, and Count Five, which alleges IIED. And, as noted, plaintiff's counts under federal law could perhaps be construed as alleging violations of state law as well. However, the Court need not exercise supplemental jurisdiction over state law claims when, as in this case, the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In exercising this discretion, the Supreme Court has instructed federal courts to "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court has also said: "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). In the application of my discretion, I discern no reason to retain supplemental jurisdiction over plaintiff's state law claims.

Plaintiff strenuously asserts that the Court has non-discretionary original jurisdiction over his state law claims, under the diversity jurisdiction statute. *See* 28 U.S.C. § 1332(a). I disagree,

for the reasons that follow.

Mr. Betskoff is an individual who apparently is a citizen of Maryland. *See* Complaint ¶ 4. Enterprise is a limited liability company. For purposes of diversity jurisdiction, the Fourth Circuit has held that "the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011); *see also Gen. Tech Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004). None of Enterprise's members are identified in the Complaint, although plaintiff alleges "upon information and belief" that Enterprise's "parent company" is another limited liability company that has the same name as Enterprise, but has offices in Saint Louis, Missouri. Complaint ¶ 5. In his Opposition, plaintiff asserts that Enterprise is "a Missouri based corporation." Opp. at 3.

The Court lacks sufficient information as to defendant's citizenship. But, even assuming, *arguendo*, that the parties are citizens of different states for diversity purposes, it is nevertheless, clear that the amount in controversy is significantly less than $75,000. As noted, plaintiff seeks "compensatory damages" in the amount of $219.66, *see* Complaint ¶ 29.a, which is apparently the total amount that he contends Enterprise improperly charged to his debit card (the sum appears to be comprised of the $100 deposit charged at the time Betskoff rented the Altima, *see id.* ¶ 9; the alleged "balance . . . due" of $100 that Enterprise later charged to Betskoff's debit card, *see id.* ¶¶ 15, 20; and the other unexplained debit of $19.66, *see id.* ¶ 14). Plaintiff also seeks the maximum amount of statutory damages under FDCPA, which is $1,000. *See* Complaint ¶ 35.a; *see also* 15 U.S.C. § 1692k(a)(2)(A) (stating that, in an FDCPA action, an individual plaintiff may recover, along with actual damages, "such additional damages as the court may allow, but not exceeding $1,000"). And, plaintiff seeks "punitive damages" of

$10,000 in his claim for violation of the Fourteenth Amendment. *See* Complaint ¶ 42.a.

Thus, even if plaintiff's federal claims were not subject to dismissal, the total of the damages pleaded in all of his claims amounts to only $11,219.66. This sum is far below the jurisdictional threshold of $75,000 that is applicable to diversity actions.

In his FTC Act and IIED counts, plaintiff also seeks "general damages," "special damages," and "punitive damages," in unspecified amounts. *See* Complaint ¶¶ 40.a-c, 47a-c. However, plaintiff has presented the Court with no basis to conclude that any recovery for these counts could exceed the $11,219.66 in compensatory, statutory, and punitive damages that plaintiff has expressly requested in the other counts.

In his Opposition, Betskoff contends, without elaboration, that his damages "could easily total more than $75,000." Opp. at 4. But, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)). "The black letter rule 'has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in "good faith."'" *Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C.*, 491 F.3d 171, 176 (4th Cir. 2007) (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961)).

To be sure, if "the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty*, that the plaintiff cannot

recover the amount claimed.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)) (emphasis in *Frashier*). Here, however, plaintiff has not claimed an amount of damages exceeding the jurisdictional threshold in the first place. Accordingly, the Complaint fails adequately to plead subject matter jurisdiction based on diversity of citizenship.

Moreover, even if plaintiff expressly had asserted diversity jurisdiction and claimed damages that exceeded the $75,000 threshold, it is clear, "to a legal certainty," that plaintiff would not be able to recover damages in excess of $75,000. Plaintiff has alleged only $219.66 in compensatory damages, and his Complaint discloses no factual basis for compensatory damages in any greater amount. Any further damages for his state law claims would have to be punitive. To be sure, "punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (stating that punitive damages must be considered in calculating the amount in controversy). However, the Fourth Circuit has counseled that "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983).

In *Saval*, a case arising under Maryland law, the Fourth Circuit recognized that, "[u]nder Maryland law, no matter what the theory of recovery, punitive damages cannot be recovered absent malice." *Id.*; *see, e.g.*, *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 265, 841 A.2d 828, 837 (2004); *Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d 1000, 1003-04 (1997); *Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916, 932 (1995); *Owens-Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992); *French v. Hines*, 182 Md. App. 201, 248-

50, 957 A.2d 1000, 1026-28 (2008).  The *Saval* Court ruled that, when a plaintiff's complaint demands punitive damages but asserts claims upon which punitive damages cannot be awarded as a matter of law, the claim for punitive damages cannot be aggregated to satisfy the jurisdictional threshold.  *See Saval*, 710 F.2d at 1033-35.  The Fourth Circuit relied upon the law of Maryland, which then permitted an award of punitive damages only upon a showing of either actual malice or implied malice.  *Saval*, 710 F.2d at 1033.  Since *Saval*, the Maryland Court of Appeals has restricted the availability of punitive damages still further, and punitive damages now can be awarded under Maryland law only in cases of "actual malice," which means "ill will, fraud, intent to injure, or other mens rea exhibiting an evil motive or purpose."  *Scott*, *supra*, 345 Md. at 29 n.3, 690 A.2d at 1004 n.3.  *See generally French*, *supra*, 182 Md. App. at 248-50, 957 A.2d at 1026-28.

Plaintiff's Complaint does not allege conduct on the part of Enterprise from which "ill will, fraud, intent to injure, or other mens rea exhibiting an evil motive or purpose" could be inferred.  Therefore, his Complaint fails to allege actual malice, and punitive damages are not available.  It is also salient that, even if plaintiff's FDCPA or FTC Act claims could be construed to set forth causes of action under the Maryland Consumer Protection Act or the MCDCA, punitive damages categorically are not recoverable under either state statute.  *See Hoffman v. Stamper*, 385 Md. 1, 49, 867 A.2d 276, 304 (2005) ("Punitive damages may not be awarded in an action brought under § 13-408," the provision for private enforcement of the Maryland Consumer Protection Act.); *see also Spence v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1995) ("[P]unitive damages are not available for violations of the [MCDCA]."); *Cilento v. B.T. Credit Co.*, 424 F. Supp. 1, 1-2 (D. Md. 1977) (same).

Finally, even if punitive damages were available, the Seventh Circuit has pointed out that

a plaintiff must "support its claim [for punitive damages] with 'competent proof,' lest fanciful claims for punitive damages end up defeating the [diversity] statute's requirement of a particular amount in controversy." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 979-80 (7th Cir. 2000). The *Del Vecchio* Court described as "sheer speculation . . . bordering on the farcical" a plaintiff's claim to potential entitlement to $75,000 in punitive damages where claimed compensatory damages were only $600, "a ratio of 125 to 1." *Id.* Mr. Betskoff's claimed compensatory damages are less than those in *Del Vecchio*, and would require a punitive-to-compensatory damages ratio of over 340 to 1 to push plaintiff's claims over the jurisdictional hurdle.

In this regard, it is also necessary to observe that the "Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor," under the rubric of punitive damages. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996). In *BMW*, the Supreme Court reversed, as constitutionally excessive, a $2 million punitive damages award that represented a 500-to-1 ratio compared to compensatory damages, and compared the award to earlier Supreme Court cases which had upheld punitive-to-compensatory damage ratios of 4 to 1 or 10 to 1, while describing those ratios as "'close to the line,'" without crossing "'into the area of constitutional impropriety.'" *Id.* at 581 (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24 (1991), and citing *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460 (1993)). The Supreme Court has also reversed, as constitutionally excessive, a $145 million punitive damages award on a $1 million award of compensatory damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).[11]

_____

[11] To be sure, the Supreme Court has also "rejected the notion that the constitutional line is marked by a simple mathematical formula." *BMW*, 517 U.S. at 582. The ratio of punitive to compensatory damages is one of several factors in ascertaining whether a punitive damage award is constitutionally excessive. *See id.* at 574-75. Nevertheless, the Court has also said that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425.

In sum, it is clear, to a legal certainty, that plaintiff cannot recover damages in excess of $75,000. Thus, even if Mr. Betskoff had properly asserted diversity jurisdiction, it would not be satisfied. Accordingly, pursuant to 28 U.S.C. 1367(c)(3), I will dismiss plaintiff's state law claims, without prejudice.

## Conclusion

For the foregoing reasons, I will grant defendant's Motion (ECF 9) and dismiss, with prejudice, Counts Two, Three, and Four of the Complaint, to the extent that they assert claims under federal law. Because the Court lacks original jurisdiction over plaintiff's state law claims, Counts One and Five (and the other counts, to the extent that they can be construed to assert claims under state law) will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). As a result, Plaintiff will have **thirty days** to re-file his state law claims in the Maryland state court system, if he chooses to do so. *See* 28 U.S.C. § 1367(d).[12]

An Order implementing these rulings follows.


Date:  January 4, 2012                                   /s/
                                         Ellen Lipton Hollander
                                         United States District Judge

---

[12] I express no opinion as to whether plaintiff states viable claims under state law.

- 23 -